UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HSBS BANK USA, N.A., *as Trustee for the Registered Holders of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2*, | Case No. 3:19-cv-00265-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, *et al.*, | |
| Defendants. | |

I.    **SUMMARY**

This action involves a title insurance dispute stemming from litigation over a homeowner's association's ("HOA") foreclosure sale. Before the Court is Defendant Fidelity National Title Insurance Company's ("Fidelity") motion to dismiss (the "MTD") (ECF No. 10) and motion for judgment on the pleadings (the "MJP") (ECF No. 20) (collectively the "Motions").[1] The MTD seeks dismissal for (1) lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2)[2]; (2) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); and (3) failure to state a claim against co-defendant Lawyers Title Insurance Corporation ("Lawyers Title") under Fed. R. Civ. P. 12(b)(6). The MJP seeks judgment in Fidelity's favor under Fed. R. Civ. P. 12(c). For the reasons discussed below, the Court

///

///

---

[1]The Court has also reviewed the parties' responses (ECF Nos. 12, 25) and replies (ECF Nos. 13, 30).

[2]Fidelity later withdrew its objection as to personal jurisdiction. (ECF No. 20 at 3 n. 1.)  Accordingly, the Court will not address Fidelity's personal jurisdiction argument.

1  will deny the MTD as to the jurisdictional argument, and grants the MJP, resulting in
2  judgment in favor of Defendants.[3]

## II.    BACKGROUND

The following facts are taken from the Complaint (ECF No. 1), unless indicated otherwise.

Luis E. Espinoza-Ayala ("Borrower") purchased real property[4] ("Property") on December 2, 2005, with a loan in the amount of $260,500.00 secured by a first deed of trust ("DOT") on the Property. (*Id.* at 3.) The DOT identified Ownit Mortgage Solutions, Inc. ("Ownit") as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary under the DOT, acting solely as the nominee for Ownit and its successors and assigns. (*Id.* at 3.) Lawyers Title issued a title insurance policy ("Policy") in connection with the DOT.[5] (*Id.* at 3-4.) The Policy identified Ownit and/or its assigns as the insured. (*Id.*) Plaintiff HSBC Bank USA, N.A.'s ("HSBC") became the assigned beneficiary under the DOT around September 24, 2012. (*Id.* at 3.)

The Property is located within an HOA, and the HOA recorded a notice of delinquent assessment lien against the Property on April 30, 2008 ("HOA Lien") for unpaid assessments. (*See id.* at 5.) The Property reverted back to the HOA through a non-judicial

---

[3]The MJP was filed only by Fidelity, but Fidelity asks the Court to extend its ruling on the MJP to Lawyers Title because the claims against both defendants are essentially the same.  (ECF No. 20 at 3 n.1.)  The Court agrees that such requested relief is appropriate. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding district court may *sua sponte* grant motion to dismiss as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants). Because the Court will extend its MJP ruling to Lawyers Title, the Court declines to address the MTD's request for dismissal of Lawyers Title for failure to state a claim.

[4]2145 Mammatus Drive, Sparks, Nevada 89436. (ECF No. 1 at 3.)

[5]Because HSBC attached the Policy to the Complaint (*see* ECF No. 1-4), the Court will consider the Policy as part of the pleading. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

foreclosure sale on May 23, 2013 ("HOA Sale"). (*Id.*) The HOA sold and quit claimed the Property to SFR Investments Pool I, LLC ("Buyer") on June 6, 2014. (*Id.* at 6.)

On April 24, 2015, HSBC provided written notice to Lawyers Title that Buyer claimed an interest in the Property superior to HSBC's DOT. (*Id.*) The tender letter requested both indemnity and defense from Lawyers Title. (*Id.* at 6-7.) By then, Lawyers Title had merged into Fidelity.[6] (ECF No. 10-1 at 2; ECF No. 10-2.) On May 18, 2015, Fidelity responded to the letter and denied the claim on the basis that the claim did not fall within the insuring provisions of the Policy and that the HOA Lien was created after the date the Policy issued. (ECF No. 1 at 7.) HSBC disputed the denial, but Fidelity maintained the denial in a second, subsequent letter. (*Id.* at 7-8.)

On September 29, 2015, HSBC filed a quiet title action against Buyer in Nevada state court ("State Action"). (*Id.* at 6.) On November 9, 2018, the state court entered judgment in favor of HSBC, finding that the DOT was not extinguished by the HOA Sale. (*Id.*) On December 12, 2018, Buyer appealed to the Nevada Supreme Court. (*Id.*)  That appeal was still pending at the time HSBC initiated this action.

HSBC asserts the following claims against Defendants: (1) breach of contract; (2) contractual and (3) tortious breach of the implied covenant of good faith and fair dealing; (4) breach of fiduciary duties; and (5) violation of NRS § 686A.310. (*Id.* at 8-13.)

### III.    MOTION TO DISMISS

The MTD seeks dismissal in part for lack of subject matter jurisdiction. The Court will address Fidelity's subject matter jurisdiction argument first.[7] Because the Court finds that it has jurisdiction, the Court will then address the merits argument raised in the MJP.

---

[6]The Plan and Agreement of Merger between both companies were filed with the California and Nebraska Secretaries of State. (ECF No. 10-2 at 6.) The parties agree that Fidelity is now the successor-in-interest to Lawyers Title. (*See* ECF No. 10 at 17-18; ECF No. 12 at 14.)

[7]The Court declines to address the MTD's argument as to dismissal of Lawyers' Title because the Court will grant the MJP,

Fidelity challenges this Court's subject matter jurisdiction on grounds that the amount in controversy was not satisfied at the time this case was initiated. (ECF No. 10 at 13-17.)

"A federal court has jurisdiction over the underlying dispute if the suit is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs (i.e., diversity jurisdiction)." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (footnote omitted) (citing 28 U.S.C. § 1332(a)). When a plaintiff "originally files in federal court, the amount in controversy alleged by the plaintiff controls as long as the claim is made in good faith. *Id.* (citing *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000)). "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *Crum*, 231 F.3d at 1131). "This is called the 'legal certainty' standard, which means a federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount.'" *Id.* (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)). The Ninth Circuit has said that the legal certainty standard is met in only three situations:

> 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986).

Fidelity argues that HSBC has not yet suffered an indemnifiable loss under the Policy—not only did the state court enter judgment in favor of HSBC, but HSBC is still litigating the State Action in an appeal to determine whether the DOT survived the HOA Sale. (ECF No. 10 at 14.) *See Stock W. Corp. v. Taylor*, 964 F.2d 912, 917 (9th Cir. 1992) ("Subject matter jurisdiction is determined on the basis of the facts that existed at the time the action was filed." (citations omitted)). HSBC does not dispute Fidelity's contention in its response. (*See* ECF No. 12 at 20.) Thus, HSBC "must rely on its claim for litigation

1  expenses incurred in defending its interest in the [P]roperty to meet the jurisdictional

2  minimum." *Wells Fargo Bank, N.A. as Tr. for Option One Mortg. Loan Tr. 2007-5 Asset-*

3  *Backed Certificates, Series 2007-5 v. Fid. Nat'l Ins. Co.* ("*Wells Fargo I*"), Case No. 3:19-

4  cv-241-MMD-WGC, 2019 WL 5578487, at *2 (D. Nev. Oct. 29, 2019).

5  While the Complaint does not include a prayer for a specific amount of damages[8]

6  (ECF No. 10 at 14; *see* ECF No. 1 at 13), HSBC alleges that the "amount in controversy

7  exceeds $75,000, exclusive of interest and costs" (ECF No. 1 at 2). This allegation is

8  sufficient because Fidelity has not shown that HSBC's allegations were made in bad faith

9  and because HSBC "need not itemize or show how [it] arrived at the amounts of damages

10  claimed." *K. Durant Enterprises, LLC v. Swanson Travel Professionals, Inc.*, Case No. CV

11  13-01534 MMM AJWX, 2014 WL 545843, at *2 (C.D. Cal. Feb. 10, 2014); *see also Leitner*

12  *v. Sadhana Temple of New York Inc.,* Case No. CV 13-07902 MMM (EX), 2013 WL

13  12149236, at *2 (C.D. Cal. Dec. 16, 2013) (holding that plaintiff's allegation that the

14  amount in controversy "is in excess of the sum of $75,000, exclusive of interests and costs"

15  was sufficient) (internal quotes and citations omitted).

16  Fidelity argues it is a legal certainty that the jurisdictional minimum is not met here

17  because independent facts show that the amount of damages was claimed merely to

18  obtain federal court jurisdiction. (ECF No. 10 at 16 (citing to *Pachinger*, 802 F.2d at 364).)

19  Fidelity elaborates that HSBC has not presented invoices in support of its alleged

20  damages, and the fees incurred by HSBC in another lawsuit between HSBC and Fidelity

21  was approximately $20,000. (ECF No. 10 at 16-17 (citing to *Wells Fargo Bank, N.A., v.*

22  *Commonwealth Land Title Insurance Co.,* Case No. 2:18-cv-00494-APG-PAL.) The Court

23  disagrees. First, HSBC need not present supporting invoices because the amount in

24  controversy alleged by HSBC controls. *See Geographic*, 599 F.3d at 1106. Second, the

25  other case Fidelity refers to was filed on March 16, 2018, whereas the State Action was

---

27  [8]HSBC claims—without any supporting evidence—that it has incurred attorneys'
fees and costs to date in excess of $65,000 and other damages of $326,476.58 "incurred
28  and provided by the Policy alone." (ECF No. 12 at 20.) Moreover, HSBC has not alleged
this in the Complaint, therefore the Court will disregard the claim.

filed many years before on September 29, 2015 and remains ongoing. The Court struggles to see how both cases are comparable in fees.

Therefore, the Court finds that subject matter jurisdiction is satisfied and proceeds to address the merits of HSBC's claims as challenged in the MJP.

## IV.    MOTION FOR JUDGMENT ON THE PLEADINGS

Fidelity argues in gist that HSBC cannot state a claim because the Policy does not cover the loss associated with the HOA Sale as alleged in the Complaint. The Court agrees and will address each claim in turn: (1) breach of contract, (2) contractual and (3) tortious breach of the implied covenant, (4) breach of fiduciary duties, and (5) violation of NRS § 686A.310.

### A.    Legal Standard

A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings utilizes the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted in that it may only be granted when it is clear to the court that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) (citations omitted). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677, (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

**B.    Discussion**

**1.  Breach of Contract**

Fidelity contends that the HOA Lien was recorded after the Policy and therefore does not invoke a covered risk insured by the Policy or is otherwise excluded by the Policy. (ECF No. 20 at 5-7.) Under section 4 of the Policy's Conditions and Stipulations, the Policy covers litigation expenses accordingly:

> [T]he Company . . . shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or encumbrance or other *matter insured against by this policy*. . . . The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters *not insured against by this policy*.

(ECF No. 1-4 at 7 (emphases added).) Most importantly, as Fidelity points out (ECF No. 20 at 6), Exclusion 3(d) of the Policy bars coverage for any "loss or damage, costs, *attorneys' fees or expenses* which arise by reason of. . . . [d]efects, liens, encumbrances, adverse claims or other matters . . . attaching or created *subsequent to Date of Policy*." (ECF No. 1-4 at 10 (emphases added).) *See Shelton v. Shelton*, 78 P.3d 507, 510 (2003) ("[A] specific provision will qualify the meaning of a general provision" in a contract.) The Date of Policy here is December 2, 2005 (ECF No. 1-4 at 11), and the HOA Lien was recorded on April 30, 2008 (ECF No. 1 at 5). (*See* ECF No. 20 at 6.) The Policy therefore excludes coverage for the HOA Lien—and any attorneys' fees or expenses incurred in the course of litigating that lien—because it arose over two years after the Date of Policy. (*See* ECF No. 1-4 at 7, 10.) In fact, this Court has held in two recent cases that insurance policies with language identical to Exclusion 3(d) excluded coverage for an HOA's delinquent assessment in circumstances similar here. *See Wells Fargo I*, 2019 WL 5578487, at *3-4; *HSBC Bank USA, Nat'l Ass'n as Tr. for Holders of Deutsche Alt-A Sec., Inc., Mortg. Loan Tr. Pass-Through Certificates Series 2007-OA3 v. Fid. Nat'l Title Grp.,*

7

*Inc.* ("*HSBC*"), Case No. 2:18-cv-2162-MMD-DJA, 2019 WL 5596392, at *2 (D. Nev. Oct. 30, 2019).

HSBC counters that Exclusion 3(d) does not apply because the HOA Lien existed before the Date of Policy. (ECF No. 25 at 6.) HSBC argues that NRS §§ 116.3116(1) and (9) support a finding that the HOA Lien existed and was perfected at the time the HOA recorded its Declarations of Covenants, Conditions and Restrictions ("CC&R") on February 12, 2002. (*See id.* at 7; ECF No. 1-15 at 6.) HSBC further argues that because the HOA Lien therefore existed before the Date of Policy (December 2, 2005), Exclusion 3(d) does not apply. (ECF No. 25 at 6-7.) But this Court has rejected a similar interpretation of NRS §§ 116.3116(1) and (9) as unreasonable. *Wells Fargo I*, 2019 WL 5578487, at *4.

> [T]he statute plainly states that the lien is created at *the time of delinquency*: '[t]he association has a lien . . . from the time the construction penalty, assessment or fine *becomes due.*' NRS § 116.3116(1) (2013). Subsection [9] simply relieves the lienholder of the obligation of recording the lien to perfect it.

*Id.* (emphases added); *see also HSBC*, 2019 WL 5596392, at *2; *Wells Fargo Bank, N.A. v. Commonwealth Land Title Ins. Co.* ("*Wells Fargo II*"), Case No. 2:18-cv-494-APG-BNW, 2019 WL 2062947, at *4 (D. Nev. May 9, 2019). Contrary to what HSBC argues, the Court's interpretation does not render NRS § 116.3116(2) superfluous because each subsection addresses different issues. (ECF No. 25 at 8-9.) NRS § 116.3116(1) discusses when an HOA lien arises; § 116.3116(9) describes what is necessary to perfect the lien— namely, nothing; and § 116.3116(2) outlines how to calculate the priority of an assessment lien. These three subsections clearly complement each other, hence the Court need not examine the legislative history of NRS § 116, as HSBC asks this Court to do. (*See* ECF No. 25 at 9-12.) *See State v. Lucero*, 249 P.3d 1226, 1228 (2011) ("[W]hen a statute is clear on its face, a court [cannot] go beyond the statute in determining legislative intent." (citation and internal quotes omitted)).

Finally, HSBC argues that Exclusion 3(d) conflicts with three provisions in the Policy that provide coverage, thus the Court must interpret the Policy in favor of HSBC. (ECF No. 25 at 4, 13-18 (relying on Endorsement 100 ¶¶ 1(a) and 2(a), and Endorsement 100.13).)

But the Court finds that none of those provisions apply. First, Endorsement 100, paragraph 1(a), insures against a loss arising from "[c]ovenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired." (ECF No. 1-4 at 16.) This provision is inapplicable because it is a change in interpretation of NRS § 116—not the CC&R—that caused HSBC to risk losing its DOT. *See Wells Fargo I*, 2019 WL 5578487, at *4 (citing to *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (2014) (finding that an HOA lien constituted a true superpriority lien)). Second, Endorsement 100, paragraph 2(a), does not apply—while it provides coverage for loss or damage sustained as a result of future violations "on the land" of the CC&R, "on the land" restricts coverage to physical violations, not an HOA assessment. *See HSBC*, 2019 WL 5596392, at *3. Last, Endorsement 100.13 is irrelevant here because it provides coverage for damages specifically sustained from a specific kind of aircraft-easement lien.[9] (*See* ECF No. 1-4 at 17.)

In sum, the Court finds that the Policy does not cover expenses that HSBC incurred in litigating the State Action. As such, the Court will grant the MJP on HSBC's breach of contract claim.

## 2. Contractual Breach of the Implied Covenant

A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991). "It is well established that a claim alleging

---

[9]Endorsement 100.13 reads:

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the lack of priority of the lien of the insured mortgage over the lien of any assessment which may be fixed or levied prior to acquisition of title by the insured, *pursuant to the document referred to in paragraph 11 of Schedule B.*

(ECF No. 1-4 at 17 (emphasis added).) Paragraph 11 of Schedule B pertains to "[e]asement for passage of aircraft, and incidental purposes" granted to Spanish Springs Pilots Association. (*Id.* at 13.)

breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *H&H Pharm., LLC v. Chattem Chemicals, Inc.*, No. 2:16-cv-2148-GMN-VCF, 2020 WL 376648, at *6 (D. Nev. Jan. 23, 2020) (citation omitted).

HSBC cannot recover on its claim for contractual breach of the implied covenant because it is expressly predicated on Fidelity's purported breach of contract. (*See* ECF No. 1 at 9-10.) For example, HSBC alleges that "Fidelity and Lawyers Title's *breaches of contract* is a self-serving effort to avoid having to incur what is otherwise likely to be a substantial expense." (ECF No. 1 at 10 (emphasis added).) Accordingly, the Court will grant the MJP on HSBC's claim for contractual breach of the implied covenant.

### 3. Tortious Breach of the Implied Covenant

Under Nevada law, breach of the implied covenant can give rise to tort liability when a special relationship exists between the parties to the contract, such as the relationship between an insurer and an insured. *Ins. Co. of the West v. Gibson Title Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006). "An insurer breaches the duty of good faith when it refuses 'without proper cause to compensate its insured for a loss covered by the policy.'" *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.* ("*Pioneer*"), 863 F. Supp. 1237, 1242 (D. Nev. 1994) (quoting *United States Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). To constitute a denial "without proper cause," an insurer must have an "actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354-55 (Nev. 1986). In other words, an insurer's incorrect determination that coverage does not exist under a particular policy is not an actionable tort unless there was no reasonable basis for that determination. *Pioneer*, 863 F. Supp at 1242.

Here, Fidelity had a reasonable basis to deny coverage because HSBC's claim was not covered by the Policy, as discussed above. The Court will therefore grant the MJP on HSBC's claim for tortious breach of the implied covenant.

///

### 4. Breach of Fiduciary Duties

The Nevada Supreme Court has held that a breach of fiduciary duty in the insurance context is not an independent cause of action. *See Commonwealth*, 2019 WL 2062947, at *6 (quoting *Powers v. U.S. Auto Ass'n*, 962 P. 2d 596, 602 (Nev. 1998)). Rather, "breach of the fiduciary nature of the insurer-insured relationship is part of the duty of good faith and fair dealing." *Id.* (quoting *Powers*, 962 P.2d at 603). Accordingly, the Court grant the MJP on HSBC's claim for breach of fiduciary duties.

### 5. Violation of NRS § 686A.310

HSBC's allegations regarding Fidelity's purported violation of NRS § 686A.310 are conclusory and devoid of factual support. (*See* ECF No. 1 at 12-13.) HSBC "merely recites the pertinent statutory language of [NRS § 686A.310] without presenting any" supporting factual allegations. *Patel v. Am. Nat'l Prop. & Cas. Co.*, 367 F. Supp. 3d 1186, 1193 (D. Nev. 2019). These allegations are insufficient to permit the Court to infer more than a possibility of misconduct. *Id.* Accordingly, the Court will dismiss HSBC's claim for violation of NRS § 686A.310.

The Court will also deny HSBC's request for leave to amend its allegations as to NRS § 686A.310 (ECF No. 25 at 22) because such allegations are essentially predicated on Defendants' purported breach of contract claim—which the Court dismisses. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("[A] district court must give plaintiffs at least one chance to amend a deficient complaint, *absent a clear showing that amendment would be futile*." (emphases added)).

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions before the Court.

It is therefore ordered that the Fidelity's motion to dismiss (ECF No. 10) is mostly denied as discussed herein.

It is further ordered that Fidelity's motion for judgment on the pleadings (ECF No. 20) is granted.

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED THIS 20th day of February 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE