UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HSBC BANK USA, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF NOMURA HOME EQUITY LOAN, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-HE2,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:19-cv-00265-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

This action involves a title insurance dispute stemming from litigation over a homeowner's association's ("HOA") foreclosure sale. Before the Court is Defendant Fidelity National Title Insurance Company's motion to dismiss the operative First Amended Complaint (ECF No. 47 ("FAC")) (ECF No. 50 ("Motion")).[1] As further explained below, the Court recently issued an order in a very similar case, *Wells Fargo Bank, N.A. v. Fidelity National Title Insurance Company*, ECF No. 52, Case No. 3:19-cv-00241-MMD-CSD (D. Nev. Sept. 20, 2022) ("*Wells Fargo*"). The reasoning in the Court's recent *Wells Fargo* decision applies in this case as well and resolves a significant portion of the arguments pertinent to the Motion. However, unlike in *Wells Fargo*, Plaintiff also alleges that the California Land Title Association ("CLTA") Form 100.13 endorsement to the pertinent title insurance policy covers its loss. (ECF No. 47 at 29.) Because the Court

---

[1]Plaintiff HSBC Bank USA, N.A., as Trustee For The Registered Holders Of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2 filed a response (ECF No. 55) and Defendant filed a reply (ECF No. 56).

finds that CLTA 100(1)(a) covers Plaintiff's loss, but CLTA 100(2)(a) does not, and CLTA 100.13 does not based on the lack of an essential allegation or allegations in the FAC—and as further explained below—the Court will grant in part, and deny in part, the Motion. And this order also denies Plaintiff's motion for leave to supplement its opposition to the Motion. (ECF No. 64.)

## II.     BACKGROUND

The underlying facts of this case have not significantly changed since the Court issued a prior order granting Defendant's motion for judgment on the pleadings and dismissing the original complaint. (ECF No. 35 ("Dismissal Order") at 2-3.) The Court accordingly incorporates by reference those background facts. (*Id.*)

The United States Court of Appeals reversed in part and vacated the Dismissal Order. (ECF No. 43 ("Memorandum").) The Ninth Circuit found the Court erred in declining to grant Plaintiff leave to amend the original complaint based on trade usage evidence Plaintiff wished to present. (*Id.* at 3-4.) The Ninth Circuit held that the extrinsic evidence—copies of insurance claims manuals and related publications—could support Plaintiff's claims, noted the Court had said as much in an order granting a motion for an indicative ruling in a similar case, and thus ordered the Court to give Plaintiff the opportunity to amend. (*Id.*) The Ninth Circuit also noted that Nevada law permits courts to consider the custom and practice of the pertinent trade even when construing an unambiguous contract. (*Id.*)

In line with the Memorandum, the Court granted Plaintiff leave to amend upon remand. (ECF No. 46.) Plaintiff timely filed the FAC. (ECF No. 47.) The FAC contains claims for: (1) declaratory judgment (*id.* at 28-30); (2) breach of contract (*id.* at 30-31); (3) breach of the implied covenant of good faith and fair dealing (*id.* at 31-33); (4) deceptive trade practices (*id.* at 33-34); and (5) unfair claims practices in violation of NRS § 686A.310 (*id.* at 34-36). The FAC at issue in *Wells Fargo*, ECF No. 52 at 9, contained the same claims.

///

Moreover, Plaintiff attached some of the same trade usage evidence to the FAC that Wells Fargo did to the FAC in *Wells Fargo*. *Compare id.* at 4-6 (summarizing the trade usage evidence attached to the FAC in that case) *with* (ECF Nos. 47-2, 47-3, 47-5, 47-7, 47-8, 47-10, 47-11).

In addition, Plaintiff in this case asserts that Defendant should have—but did not—cover its loss under the CLTA 100(1)(a) or 100(2)(a) endorsements. (ECF No. 47 at 28-29.) The *Wells Fargo* order addresses the same two endorsements. *See Wells Fargo*, ECF No. 52 at 11-19. There, the Court found that CLTA 100(1)(a) covered the plaintiff's loss, but CLTA 100(2)(a) did not. *See id.*

In addition, the parties' arguments regarding dismissal of the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, deceptive trade practices, and unfair claims practices in violation of NRS § 686A.310 are also very similar, if not nearly identical, between the two cases, so, as also further explained below, the Court's *Wells Fargo* decision largely controls the analysis of those claims in this case as well. *Compare Wells Fargo*, ECF No. 52 at 21-24 *with* (ECF Nos. 50 at 17-22, 55 at 22-25).

Shifting from a comparison of the two cases entirely back to this one, and as noted, this case differs from *Wells Fargo* because Plaintiff also alleges that CLTA 100.13 covers its loss. (ECF No. 47 at 29.) As the Court noted in the Dismissal Order, the version of CLTA 100.13 included in the pertinent policy (American Land Title Association Loan Policy Number G47-Z122542 ("Policy") (ECF No. 47-1 at 2)) does not appear to apply to the facts of this case because "it provides coverage for damages specifically sustained from a specific kind of aircraft easement lien." (ECF No. 35 at 9; *see also id.* at 9 n.9 (explaining why this is the case).) That remains true in the copy of the Policy attached to the FAC. (ECF No. 47-1 at 13, 17.) However, the FAC also contains the following pertinent allegations:

///

///

///

3

> 186. CLTA 100.13 contains a clerical error in its reference to paragraph 11 and was intended to refer to Paragraph 12 of Schedule B.
> 187. The CC&Rs are identified as a document in Schedule B, Exception No. 12.
> 188. It was the true understanding and intention of the parties to the Policy for CLTA 100.13 to refer to the CC&Rs in Schedule B, Exception No. 12 but for a scrivener's error.
> 189. The HOA had a priority lien at Date of Policy.
> 190. The HOA's subsequent sale pursuant to the CC&Rs and NRS 116 resulted in damages to HSBC Bank.
> 191. As such, CLTA 100.13 provides coverage.

(ECF No. 47 at 29.) In other words, Plaintiff alleges the reference to paragraph 11 was a mutual mistake, and the version of CLTA 100.13 included in the Policy should have referred to paragraph 12 of Schedule B instead. And as noted in the excerpt included above, Paragraph 12 of Schedule B refers to the Covenants Conditions & Restrictions ("CC&Rs") of the pertinent HOA. (*Id.*)

Plaintiff attached as exhibits to its FAC some trade usage evidence allegedly relevant to CLTA 100.13. (*Id.* at 5-11 (describing some of those exhibits).) For example, one piece of this evidence purportedly issued by CLTA as an instruction to title insurance agents who were considering selling CLTA 100.13 states that the endorsement, "[p]rovides coverage in the event the insured mortgage lacks priority over assessment liens, provided for in any CC&R's shown as an exception in Schedule B, which arise prior to acquisition of title by the insured." (ECF No. 47-6 at 52.) Similarly, a 2008 Stewart Title underwriting guideline states that CLTA 100.13, "[p]rovides the ALTA lender with insurance that the lien of any homeowners association maintenance or upkeep assessments levied under the CC&Rs shown in Schedule B, is and will be, subject and subordinate to the insured deed of trust or mortgage."[2] (ECF No. 47-9 at 2.)

---

[2] The Policy issued in 2005. (ECF No. 47-1 at 2.) The Court makes no ruling in this order as to whether this 2008 guideline is relevant trade usage evidence because it is not strictly relevant to the analysis that follows farther below, though the Court is somewhat skeptical considering that it postdated the policy by approximately three years.

## IV. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

///

///

## V.   DISCUSSION

The parties' motions raise overlapping issues that largely turn on whether CLTA 100(1)(a), CLTA 100(2)(a), or CLTA 100.13 cover Plaintiff's loss. The Court accordingly addresses the overlapping coverage issues together, before addressing Defendant's Motion as to Plaintiff's extracontractual claims and finally whether it will grant Plaintiff leave to amend. However, the Court first addresses Plaintiff's motion for leave to supplement its opposition to the Motion.

### A. Motion to Supplement

Plaintiff seeks leave to supplement its opposition to the Motion with additional authority its counsel has become aware of since filing the opposition, as the same counsel is apparently working on many similar cases. (ECF No. 64 at 1-2.) Noting that the Court recently issued the *Wells Fargo* order, Plaintiff's counsel seeks to offer additional argument effectively seeking reconsideration of the Court's ruling in that order that CLTA 100(2)(a) does not provide coverage, arguing that her increased familiarity with pertinent caselaw since February (when she filed the opposition) constitutes good cause to supplement. (*Id.*) As of the date of entry of this order, Defendant has not yet responded to Plaintiff's motion for leave to supplement. But the Court nonetheless denies the motion to supplement because Plaintiff has not shown good cause for the Court to consider the argument or caselaw presented in the motion.

"LR 7-2(g) requires parties to acquire leave of court before filing supplemental briefs." *Ra Se. Land Co. LLC v. First Am. Title Ins. Co.*, Case No. 2:14-cv-01621-MMD-NJK, 2016 WL 4591740, at *2 (D. Nev. Sept. 2, 2016). "A court may grant such a request for good cause." *Id.* Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful. *See Hunt v. Washoe Cty. Sch. Dist.*, Case No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019).

///

Plaintiff does not proffer any precedential authority that post-dates its opposition in this case in its motion to supplement. (ECF No. 64 at 2-5.) Nor does Plaintiff proffer any new evidence. Instead, Plaintiff attempts to expand its argument on CLTA 100(2)(a), primarily relying on a series of out-of-state, state court cases that all predate its opposition.[3] (*Id.*) Plaintiff does not offer any explanation as to why it did not raise any of these cases in its opposition—though they undisputedly existed at the time—other than its counsel has become more familiar with title insurance cases since February. (*Id.* at 1-2.) This does not constitute the requisite good cause. Moreover, none of these cases bind the Court in any event, much less control the outcome of this litigation.

The Court additionally finds it improper that Plaintiff is effectively seeking reconsideration of the Court's ruling that CLTA 100(2)(a) does not provide coverage in *Wells Fargo* via a motion styled as a motion for leave to supplement in this case. If Plaintiff wishes to file a motion for reconsideration in *Wells Fargo*, file it in *Wells Fargo*. In sum, the Court denies the motion to supplement.

**B. Coverage**

The Court first addresses the CLTA 100(1)(a) and CLTA 100(2)(a) endorsements together, and then the CLTA 100.13 endorsement.

**1.    CLTA 100(1)(a), CLTA 100(2)(a)**

As noted, the Court found in *Wells Fargo* that the CLTA 100(1)(a) endorsement covered the plaintiff's loss, but the CLTA 100(2)(a) endorsement did not. *See Wells Fargo*, ECF No. 52 at 11-19. The Court makes the same findings here for the reasons provided in that order. *See id.* After all, the allegations, arguments, and pertinent evidence attached to the FAC in this case are substantially similar to the materials the Court considered in *Wells Fargo* as to these two endorsements.

///

---

[3] Plaintiff does cite repeatedly to *U.S. Home Corp. v. Michael Ballesteros Trust*, 415 P.3d 32 (Nev. 2018) (ECF No. 64) but it cited to that case in its opposition as well (ECF No. 55 at 14).

7

Accordingly, Defendant's Motion is denied to the extent it is based on the argument that the CLTA 100(1)(a) endorsement does not cover Plaintiff's loss but granted to the extent it is based on the argument that the CLTA 100(2)(a) endorsement does not cover Plaintiff's loss.

### 2. CLTA 100.13

Defendant argues the Court should dismiss Plaintiff's claims to the extent based on this endorsement because it covers loss or damage resulting from an aircraft easement by its express terms, alternatively arguing that Plaintiff has not articulated any legal theory in its FAC that would permit the Court to correct any mistake with this endorsement if there is a mistake. (ECF No. 50 at 15-16.) While Plaintiff does not dispute that, as written in the Policy, the CLTA 100.13 endorsement does not cover its loss, Plaintiff argues it would have if the endorsement was written as the parties allegedly mutually agreed it was going to be at the time the Policy issued. (ECF No. 55 at 17-20.) Plaintiff further argues it has alleged what amounts to mutual mistake in the FAC, and the Court must accept that allegation as true. (*Id.* at 18.) Plaintiff additionally argues that it did not need to expressly plead a reformation theory in the FAC because reformation is a remedy, not a cause of action. (*Id.* at 20-21.) Plaintiff finally asks for leave to amend if the Court disagrees. (*Id.* at 21-22.) In reply, Defendant argues in pertinent part that the allegation regarding mutual mistake is a legal conclusion that the Court need not accept as true. (ECF No. 56 at 7-8.) The Court agrees with Defendant in pertinent part.

As the Court found in the Dismissal Order (ECF No. 35 at 9, 9 n.9), the CLTA 100.13 endorsement included in the Policy does not cover Plaintiff's loss by its express terms because it covers a loss by reason of lack of priority of the insured mortgage resulting from an easement for passage of aircraft, and incidental purposes (ECF No. 47-1 at 13, 17). And while Plaintiff alleges in the FAC that this was a result of mutual mistake (ECF No. 47 at 18, 29), mutual mistake is a question of contract interpretation,

and "[c]ontract interpretation generally presents a question of law[.]"[4] *Anderson v. Sanchez*, 373 P.3d 860, 863 (Nev. 2016); *see also id.* at 863-864 (analyzing a question of mutual mistake as one of contract interpretation). Plaintiff's allegation that there was a mutual mistake is accordingly a legal conclusion that the Court is not required to accept as true at this stage. *See Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). And as a practical matter, it would be logically easier to accept the allegation of mutual mistake as plausible if Defendant agreed there had been a mutual mistake. But Defendant does not, making the facial inapplicability of the CLTA 100.13 endorsement in the Policy its lead argument in its Motion (ECF Nos. 50 at 15-16), and doubling down on it in reply (ECF No. 56 at 7-8). Thus, there appears to be a genuine dispute as to whether the parties made a mutual mistake in drafting and agreeing to the CLTA 100.13 endorsement in the Policy. But in any event, at this stage, the Court does not accept as true Plaintiff's allegation that there was a mutual mistake.

And whether reformation is a cause of action or a remedy, Plaintiff's FAC lacks any reference to, or discussion of, the concept. (ECF No. 47.) Without any discussion of reformation in the FAC, particularly no request for it as part of the relief sought as to the CLTA 100.13 endorsement, how can the Court find in Plaintiff's favor that the CLTA 100.13 endorsement covers its loss? The question begs the answer: the Court cannot—not based on the allegations in the FAC. The Court would first have to reform the contract in the way that Plaintiff desires, but the FAC gives the Court no avenue to do so.

As to the trade usage evidence allegedly pertinent to the interpretation of the CLTA 100.13 endorsement, none of it speaks to the CLTA 100.13 endorsement in the

---

[4]The Policy does not contain a choice of law provision. (ECF No. 47-1.) The parties appear to presume the Policy is governed by Nevada law; the Court agrees because Nevada has the most substantial relationship to the Policy. *See Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063-64 (Nev. 2014) ("Nevada tends to follow the Restatement (Second) of Conflict of Laws (1971) in determining choice-of-law questions involving contracts, generally, and insurance contracts, in particular.") (internal citations omitted).

Policy, because none of it discusses aviation easements. (ECF Nos. 47-6 at 52, 47-9 at 2.) But the Court of course acknowledges Plaintiff's argument that the fact the trade usage generally describes the CLTA 100.13 endorsement as covering something like the loss at issue here, and not discussing aviation easements, suggests that there was a mistake in the Policy. (ECF No. 55 at 18.) The Court finds that argument persuasive. Indeed, based on the text of the CLTA 100.13 endorsement, the aviation easement does not seem like it fits.

However, the Court cannot simply accept Plaintiff's theory of the case as true at this stage, particularly where Plaintiff's FAC does not ask for reformation of any sort, and Defendant contends that there is no mistake in the Policy. Defendant's Motion is therefore granted to the extent it seeks dismissal of Plaintiff's claims based on the contention that CLTA 100.13 endorsement covers Plaintiff's loss.

**C. Extra-Contractual Claims**

The Court also incorporates by reference its discussion of the extra-contractual claims in the *Wells Fargo* order because the same analysis applies here as well. *See Wells Fargo*, ECF No. 52 at 21-24.

Like in *Wells Fargo*, the parties' arguments regarding Plaintiff's claim for breach of the implied covenant of good faith and fair dealing turn on whether the Court agrees that one of Plaintiff's proffered endorsements covers Plaintiff's loss or not. (ECF Nos. 50 at 17-18, 55 at 22-23 (making their arguments).) Because the Court finds that CLTA 100(1)(a) covers Plaintiff's loss, Plaintiff's claim for breach of the covenant of good faith and fair dealing may proceed, and Defendant's Motion is accordingly denied to the extent it seeks dismissal of that claim.

The parties' arguments regarding Plaintiff's deceptive trade practices claim are also substantially identical to the arguments the Court resolved in the *Wells Fargo* order, and the Court will accordingly resolve them in the same way it did in that case. (ECF Nos. 50 at 18-20, 55 at 23-24 (making their arguments).) *See also Wells Fargo*, ECF No. 52 at 21-22. Like in *Wells Fargo*, Defendant does not dispute that Plaintiff's original

complaint was timely filed, but notes that the original complaint did not contain a deceptive trade practices claim and therefore argues that that the deceptive trade practices claim does not relate back, or alternatively that Plaintiff fails to state a claim. (ECF No. 50 at 18-19.) For the reasons provided in *Wells Fargo*, the Court disagrees. *See Wells Fargo*, ECF No. 52 at 21-22. The Court accordingly denies Defendant's Motion to the extent it seeks dismissal of Plaintiff's deceptive trade practices claim.

Finally, the parties' arguments regarding Plaintiff's NRS § 686A.310 claim are also substantially identical to the arguments the Court resolved in the *Wells Fargo* order, and the Court will accordingly resolve them in the same way it did in that case. (ECF Nos. 50 at 20-22, 55 at 24-25 (making their arguments).) *See also Wells Fargo*, ECF No. 52 at 22-24. Like in *Wells Fargo*, there is no dispute here that Defendant formally denied Plaintiff's claim more than three years before Plaintiff filed its original complaint. (ECF Nos. 50 at 20, 55 at 24-25 (declining to dispute the dates it filed the original complaint or received Defendant's claim denial letter).) Thus, for the reasons provided in *Wells Fargo*, the Court dismisses Plaintiff's NRS § 686A.310 claim as time barred. *See Wells Fargo*, ECF No. 52 at 22-24. And Plaintiff makes the same arguments to resist this conclusion that the plaintiff did, and the Court rejected, in *Wells Fargo*. *See id.* (*See also* ECF No. 55 at 24-25.) The Court accordingly rejects those arguments for the same reasons it did in *Wells Fargo*. Defendant's Motion is granted to the extent it seeks dismissal of Plaintiff's NRS § 686A.310 claim.

**D. Leave to Amend**

Plaintiff seeks leave to amend if the Court dismisses any of its claims. (ECF No. 55 at 25.) Defendant contends that the Court should not grant leave to amend because Plaintiff has already had an opportunity to amend and any amendment would be futile. (ECF No. 50 at 22.) These arguments again present the Court with a situation similar to the situation it faced in *Wells Fargo*, and the Court will resolve these arguments consistently with the way it resolved them in *Wells Fargo*. *See Wells Fargo*, ECF No. 52 at 24-25.

11

As explained *supra*, Plaintiff may proceed with its first, second, third, and fourth claims to the extent they are based on Defendant's decision to deny coverage despite the fact that the CLTA 100(1)(a) endorsement covers Plaintiff's loss.

But for the reasons provided in *Wells Fargo*, the Court denies Plaintiff's request for leave to amend its claims to the extent they are based on the CLTA 100(2)(a) endorsement—and denies Plaintiff's request for leave to amend its NRS § 686A.310 claim—as amendment would be futile. *See Wells Fargo*, ECF No. 52 at 24-25.

That said, the Court grants Plaintiff leave to amend its FAC to the extent Plaintiff insists the CLTA 100.13 endorsement covers Plaintiff's loss. The Court cannot say that amendment of Plaintiff's FAC to the extent based on this theory would be futile. Indeed, as noted, Plaintiff's mutual mistake theory is plausible given the apparent mismatch between the language of the endorsement and the content of paragraph 11 of Schedule B. And Plaintiff could plausibly add some allegations going to the reformation concept that could enable the Court to find the CLTA 100.13 endorsement covers Plaintiff's loss by the ultimate conclusion of this case. Thus, Plaintiff may amend its FAC to further amend its allegations regarding Plaintiff's contention that the CLTA 100.13 endorsement covers Plaintiff's loss. Plaintiff must file any amended complaint within 30 days.

## VI.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 50) is granted in part, and denied in part, as specified herein.

It is further ordered that Plaintiff's motion to supplement (ECF No. 64) is denied.

It is further ordered that Plaintiff must file any amended complaint as permitted herein within 30 days. Failure to timely file such an amended complaint may result in in

the Court dismissing Plaintiff's claims to the extent based on the theory that the CLTA 100.13 endorsement covers Plaintiff's loss without any further advance notice.

DATED THIS 23rd Day of September 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE